UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Yvonne Burgi and Robert J.
Burgi,

                        Plaintiffs,

   vs.

Gurstel Law Firm, PA,[1]
OSI Portfolio Services, and
John and Jane Does 1-10,

                    Defendants.         Civ. No. 07-4772 (PJS/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Gurstel, Staloch, & Chargo, P.A. ("Gurstel"), to Dismiss. A Hearing on the Motion was conducted on May 6,

---

[1]Although the Complaint identifies the Defendant as Gurstel Law Firm, P.A., counsel for Gurstel advises that the entity's proper name is now Gurstel, Staloch & Chargo, P.A. Accordingly, we have substituted Gurstel, Staloch & Chargo, P.A., as the named Defendant, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure.

2008, at which time the Plaintiffs Yvonne ("Burgi") and Robert J. Burgi (collectively, the "Burgis") appeared pro se, and Gurstel appeared by Michael D. Johnson, Esq.[2]

For reasons which follow, we recommend that Gurstel's Motion to Dismiss be granted.

## II.  Factual and Procedural History

According to the Complaint, the Burgis owed a balance of $14,496.23 on a Capital One Bank credit card.  See, Complaint, Docket No. 1, at ¶6.  Capital One Bank retained Gurstel to collect the debt, and accordingly, on January 30, 2006, Gurstel sent a letter to Burgi, in which it requested full payment of the outstanding obligation.  Id. at ¶7 and Exhibits at unnumbered page 17.  In that letter, Gurstel advised Burgi that she had thirty (30) days to dispute the debt in writing.  Id., Exhibits at unnumbered

---

[2]At the Hearing, no appearance was made by, or on behalf of, the Defendant OSI Portfolio Services ("OSI").  By way of additional background, on April 17, 2008, we issued an Order, in which we directed the Plaintiffs to show good cause, in writing, for an extension of time in which to effect service of process on OSI, and we warned the Plaintiffs that their failure to comply with our directive could result in dismissal of their claims against OSI.  See, Docket No. 22.  The Plaintiffs failed to comply with our Order of April 17, 2008, and accordingly, on May 16, 2008, after we had conducted a Hearing on Gurstel's Motion to Dismiss, we issued a Report in which we recommended that this action be dismissed, with respect to OSI, for failure to effect proper service, and for failure of prosecution.  See, Docket No. 28.  By Order dated June 10, 2008, the District Court, the Honorable Patrick J. Schiltz presiding, adopted our Report and Recommendation in its entirety.  See, Docket No. 29.

page 17.  Thereafter, on August 11, 2006, Gurstel commenced a civil action in Blue Earth County District Court, on behalf of Capital One Bank, in order to recover the amount owed.  Id. at ¶10, Exhibits at unnumbered pages 36-39.  After the collection action had commenced, by letters dated August 23, September 22, and October 11, 2006, the Burgis disputed the validity of the debt, and demanded verification from Gurstel.  Id. at ¶8 and Exhibits at unnumbered pages 24-31.

More than one (1) year later, on December 6, 2007, the Burgis filed their current Complaint, in which they allege that Gurstel has violated the Fair Debt Collection Practices Act ("FDCPA"), Title 15 U.S.C. §1692 et seq., the Fair Credit Reporting Act ("FCRA"), Title 15 U.S.C. §1681 et seq., and the Minnesota Collection Agencies Act ("CAA"), Minnesota Statutes Section 332.37.  Id. at ¶1.  First, the Burgis contend that Gurstel failed to verify their debt upon request.  Id. at ¶9.  Second, the Burgis contend that Gurstel failed to advise third-party Credit Reporting Agencies ("CRAs") that the Burgis had disputed the debt.  Id. at ¶16.  Third, the Burgis contend that Gurstel improperly prosecuted the underlying collection action, even after the Burgis disputed the debt.  Id. at ¶¶10, 16.  Lastly, the Burgis contend that Gurstel misrepresented the true owner of the debt when it commenced the underlying

collection action.  Id. at ¶¶11, 15.  They seek injunctive and declaratory relief, as well as damages.

Gurstel now brings a Motion to Dismiss, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim.[3]  See, Docket No. 6.

## III.  Discussion

A.   Standard of Review.  "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]."  Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).  In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party.  See, Maki v. Allete, Inc., supra at 742.  "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support

---

[3]Gurstel initially sought dismissal, alternatively, pursuant to Rule 12(b)(5), Federal Rules of Civil Procedure, based on the Burgis' failure to effect service of process.  See, Docket No. 6.  However, at the Hearing, Gurstel's counsel advised that the service deficiency had been cured, and Gurstel withdrew that basis for its Motion.

of a claim entitling him to relief." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998), cert. denied, 525 U.S. 921 (1998); see also, Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998); see also, Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S.Ct. 1955, 1964-65 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the

court."  Rule 12(b), Federal Rules of Civil Procedure.  However, a Court may consider

some information, which is not contained within the Complaint -- such as materials

that are part of the public record, and materials that are necessarily embraced by the

pleadings -- without transforming the Motion into one for Summary Judgment.  See,

Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see,

Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069

(8th Cir. 2004); Stahl v. United States Dep't of Agriculture, 327 F.3d 697, 700 (8th Cir.

2003).

Materials necessarily embraced by the pleadings include "documents whose

contents are alleged in the complaint, and whose authenticity nobody questions, but

which are not physically attached to the pleading."  Fraenkel v. Messerli & Kramer,

P.A., 2004 WL 1765309 at *2 (D. Minn., July 29, 2004), quoting Kushner v. Beverly

Enters., 317 F.3d 820, 831 (8th Cir. 2003), see also, Jenisio v. Ozark Airlines, Inc.,

Ret. Plans, 187 F.3d 970, 972 n.3 (8th Cir. 1999)("A district court may consider

documents on a motion to dismiss where * * * the plaintiff's claims are based solely

on the interpretation of the documents and the parties do not dispute the actual

contents of the documents.").

Here, the Burgis have attached numerous exhibits to their Complaint, including correspondence between the Burgis and Gurstel, correspondence between the Burgis and Capital One Bank, and documents which were filed in Blue Earth County District Court, in connection with the underlying collection lawsuit.  See, Complaint, supra, Exhibits; Exhibit 1 to the Complaint, Docket No. 20.  In analyzing the merits of Gurstel's Motion, we have considered the allegations contained in the Complaint and its exhibits.[4]  Since all of those documents have been incorporated into the Burgis' Complaint, and since neither party disputes their authenticity, or contents, our consideration of those documents does not convert Gurstel's Motion into one for Summary Judgment.  See, Fraenkel v. Messerli & Kramer, P.A., supra at *2.

---

[4]We have not, however, relied upon the documents which were submitted by Gurstel in support of its present Motion.  Indeed, most of the documents, which were submitted by Gurstel, had already been submitted by the Burgis, in support of their Complaint, with the single exception of a second demand letter, dated June 13, 2006.  See, Affidavit of Heidi L. Staloch ("Staloch Aff."), Docket No. 9, Exhibit B.  This letter is identical to an initial demand letter dated January 30, 2006, see, Complaint, supra, Exhibits at unnumbered page 17, and the Defendants advise that the second demand letter was sent only because Gurstel became aware of an alternative address for Burgi.  See, Defendant's Memorandum in Support, Docket No. 8, at 3.

B.    <u>Legal Analysis</u>.

1.    <u>The Plaintiffs' Federal Law Claims</u>.

a.    <u>The FDCPA</u>.  As a threshold matter, we outline the statutory provisions of the FDCPA which are implicated by the Burgis' Complaint.  In Count One of their Complaint, the Burgis assert that Gurstel's conduct "constitute[s] numerous and multiple violations of the FDCPA," including Title 15 U.S.C. §§1692d, 1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692g(b).    See, <u>Complaint</u>, supra at ¶¶20, 24.

As is pertinent here, Section 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  Such conduct ordinarily consists of harassing communications, between the debt collector and the debtor, although the provision may include other types of "conduct" as well.  Here, the Burgis have not provided any factual allegations in their Complaint to support a claim for harassment, other than a bald citation to Section 1692d, and a conclusory statement that Gurstel's conduct "as alleged herein have [sic] constituted harassment which has resulted in the negligent and intentional infliction of mental and emotional distress upon the Plaintiffs * * * ."  <u>Complaint</u>, supra at ¶19.  However, in their supporting

- 8 -

exhibits, the Burgis accuse Gurstel of making more than 100 telephone calls to their residence, between January and August of 2006. Id., Exhibits at unnumbered page 14. They further accuse Gurstel of making those telephone calls "up to 13 times a day, -- even up to 9 PM," and they allege that the callers are rude and demanding. Id., Exhibits at unnumbered page 26. Accordingly, we will consider whether the Burgis have stated a claim pursuant to Section 1692d.

Next, Section 1692e prohibits a debt collector from "using any false, deceptive, or misleading representation or means in connection with the collection of any debt." Contained within that general prohibition are specific prohibitions against "[t]he false representation of * * *the character, amount, or legal status of any debt," Title 15 U.S.C. §1692e(2)(A), "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," Title 15 U.S.C. §1692e(5), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer." Title 15 U.S.C. §1692e(10). Similarly, Section 1692f prohibits debt collectors from "using unfair and unconscionable means to collect or attempt to collect any debt." Again, the Burgis have not alleged any facts which relate to the use of deceptive or unfair means to collect a debt, and therefore, we do not address those provisions further.

However, we do consider whether the Burgis have stated a claim pursuant to Section 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." As noted above, the Burgis contend that Gurstel failed to report the dispute over the debt to third-party CRAs, following their letter of August 23, 2006. See, <u>Complaint</u>, supra at ¶16.

In addition, we address whether the Burgis have stated a claim pursuant to Section 1692g(b), which states that, "[i]f the consumer notifies the debt collector in writing within [30 days of an initial demand letter] that the debt, or any portion thereof, is disputed, * * * the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt * * * , and a copy of such verification or judgment * * * is mailed to the consumer by the debt collector." As we have noted, the Burgis contend that they disputed the validity of the debt at issue, by letter dated August 23, 2006, but that Gurstel failed to provide any verification. See, <u>Complaint</u>, supra at ¶9. They also contend that Gurstel continued to prosecute its collection action in State Court, after they disputed the debt. <u>Id.</u> at ¶¶10, 16.

Lastly, in addition to the provisions outlined above, we also consider whether the Burgis have stated a claim pursuant to Section 1692e(14), which prohibits "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." Although the Complaint makes no mention of Section 1692e(14), as we have detailed, the Burgis contend that Gurstel misrepresented the true owner of the debt, when it commenced the underlying collection action. See, <u>Complaint</u>, supra at ¶¶11, 15. Construing the Complaint generously, the allegation could be read as a separate FDCPA claim, under Title 15 U.S.C. §1692e(14).

   b. <u>The FDCPA's Statute of Limitations</u>. We first consider whether the statute of limitations has expired for any asserted claim under the FDCPA. Title 15 U.S.C. §1692k(d) provides as follows:

> An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

The question, then, is when the alleged FDCPA violations occurred because, under the one (1) year statute of limitations, we lack jurisdiction for any conduct which occurred on or before December 7, 2006. See, <u>Mattson v. U.S. West</u>

- 11 -

Communications, Inc., 967 F.2d 259, 262 (8th Cir. 1992)(concluding that, if an alleged

FDCPA violation occurred on November 27, 1989, then the statute of limitations

expired 365 days later, on November 26, 1990); Sower v. Van Ru Financial Services,

Inc., 1995 WL 870853 at *2 (D. Minn., June 28, 1995).

Here, with respect to their Section 1692d claim, the Burgis allege that Gurstel

made more than 100 harassing telephone calls to their residence from January to

August of 2006. See, Complaint, supra, Exhibits at unnumbered pages 14, 26. At the

very latest, the Burgis knew of their potential harassment claim by no later than

August 23, 2006, when they sent a letter to Gurstel, in which they complained about

the telephone calls, and claimed that Gurstel had violated the FDCPA. Id., Exhibits

at unnumbered pages 26-31. Since the Burgis did not file their Complaint until

December 6, 2007, any claim pursuant to Section 1692d is barred by the statute of

limitations. This would be true even if the Burgis had alleged an ongoing harassment

relating to the debt at issue -- which they have not. See, Nutter v. Messerli & Kramer,

P.A., 500 F. Supp.2d 1219, 1223 (D. Minn. 2007)("[N]ew communications * * *

concerning an old claim * * * [do] not start a new period of limitations."), quoting

Campos v. Brooksbank, 120 F. Supp.2d 1271, 1274 (D.N.M. 2000); see also, Sierra

v. Forster & Garbus, 48 F. Supp.2d 393, 395 (S.D.N.Y. 1999).   Accordingly, the
Section 1692d claim fails as a matter of law.

Next, with respect to their Section 1692g(b) claims, the Burgis allege that, on
January 30, 2006, Gurstel sent an initial demand letter to Burgi, and on August 11,
2006, Gurstel commenced the underlying collection action in State Court.   See,
Complaint, supra at ¶¶7, 10, Exhibits at unnumbered pages 17, 36-39.  On August 23,
2006, Burgi sent a letter to Gurstel, in which she advised Gurstel that she disputed the
debt and that Gurstel had violated the FDCPA, and in which she demanded that
Gurstel cease all collection activities and verify the debt within thirty (30) days.  Id.
at ¶8, Exhibits at unnumbered pages 26-31.  She repeated that demand by letters dated
September 22, and October 11, 2006, and asked for a response within ten (10) days.
Id. at ¶8, Exhibits at unnumbered pages 24-25.

Here, insofar as the Burgis' claims relate to Gurstel's initial demand letter, the
statute of limitations began to run on January 30, 2006.  See, Cohen v. Beachside
Two-I Homeowners' Ass'n, 2006 WL 1795140 at *9 (D. Minn., June 29, 2006), aff'd
as modified, 272 Fed.Appx. 534 (8th Cir. 2008), petition for cert. filed (U.S., August
20, 2008)("With respect to letters, the statute of limitations begins to run the date the
letter is mailed."), citing Mattson v. U.S. West Communications, Inc., supra at 261.

- 13 -

Insofar as their claims relate to the underlying collection action, the statute of limitations began to run on August 11, 2006.  See, <u>Nutter v. Messerli & Kramer, P.A.</u>, supra at 1223 (concluding that the plaintiffs had notice of the defendant's claim, that the debt remained outstanding, by the date when the defendant initiated its lawsuit in State Court).

Moreover, even construing the Complaint generously, the Burgis were aware of their potential claims, pursuant to Section 1692g(b), attributable to Gurstel's alleged failure to verify the debt, and its ongoing prosecution of the collection action, by no later than October 11, 2006, as evidenced by their third letter.  Accordingly, that claim is also time-barred.[5]  The same is true of the Burgis' asserted claim pursuant to Section 1692e(8), as to Gurstel's alleged failure to report the dispute to third-party CRAs.[6]  See also, <u>Wilhelm v. Credico, Inc.</u>, 455 F.Supp.2d 1006, 1009 (D.N.D. 2006),

---

[5]In addition, the Burgis' verification claim fails because they did not dispute the validity of the debt within thirty (30) days, as required.  See, <u>Sower v. Van Ru Financial Services, Inc.</u>, 1995 WL 870853 at *4 (D. Minn., June 28, 1995) ("[C]onsumers' debt validation rights persist for only 30 days after receipt of a communication containing the validation notice[.]"), quoting <u>Robinson v. Transworld Systems, Inc.</u>, 876 F.Supp. 385, 391 (N.D.N.Y.1995).

[6]Alternatively, we recommend that the Burgis' claim under Section 1692e(8) be dismissed, because the Burgis failed to allege that Gurstel made **any** report to a third-party CRA that would have "triggered the requirement under Section 1692e(8)
(continued...)

- 14 -

aff'd, 519 F.3d 416 (8th Cir. 2008)(rejecting a serial violations theory, and holding, "as a matter of law, Wilhelm's claims against Pinnacle based on 15 U.S.C. §1692e(8) accrued shortly after December 10, 2003 -- the date Wilhelm first sent a letter to Credico disputing the debt"); Fraenkel v. Messerli & Kramer, P.A., supra at *4 (concluding that a violation accrued when the initial demand letter was sent, because the later State Court Complaint simply repeated the same information); cf., Kojetin v. C.U. Recovery, Inc., 1999 WL 33916416 at *8 n. 6 (D. Minn., February 17, 1999), adopted, 1999 WL 1847329 (Tunheim, J.), aff'd, 212 F.3d 1318 (8th Cir. 2000)(concluding that the plaintiff's action was not time-barred, pursuant to Section 1962g, where the defendant sent a validation notice on October 18, 1996, which violated the FDCPA by misstating the amount owing, and the plaintiff filed suit on October 9, 1997).

---

[6](...continued)
that [Gurstel] also report that said debt was disputed." Black v. Asset Acceptance, LLC, 2005 U.S. Dist. LEXIS 43264 at *14-15 (N.D. Ga., December 9, 2005); compare, Wilhelm v. Credico, Inc., 519 F.3d 416, 418 (8th Cir. 2008)("When a debt collector learns of a dispute **after** reporting the debt to a credit bureau, the dispute need not also be reported."), quoting FTC Staff Commentary, 53 Fed. Reg. 50097-02, 50106 (Dec. 13, 1988).

Accordingly, we conclude that the Burgis' claims, pursuant to Sections 1692d, 1692e(8), and 1692g(b), are barred by the statute of limitations, and we recommend that Gurstel's Motion be granted, with respect to those claims.

        c.     <u>The Plaintiffs' Section 1692e(14) Claim</u>. We turn separately to consider whether the Burgis have stated a claim under Section 1692e(14). As noted, the Burgis contend that Gurstel misrepresented the true owner of the debt, when it commenced the State Court action on August 11, 2006, on behalf of Capital One Bank. See, <u>Complaint</u>, supra at ¶¶11, 15. In support of that claim, the Burgis allege that they "received notification from the Federal Deposit Insurance Company on or about December 21, 2006 that the alleged debt was assigned to [OSI] on January 14, 2006." <u>Id.</u> at ¶11. Construing the Complaint generously, we understand the Burgis' claim to be that OSI was the true owner of the debt as of August 11, 2006. See, <u>Title 15 U.S.C. §1692e(14)</u>(prohibiting "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.").

As an initial matter, because the alleged misrepresentation occurred on August 11, 2006, this claim is barred by the statute of limitations, as with the Burgis' other FDCPA claims. However, even if the statute of limitations did not begin to run until

December 21, 2006, when the Burgis allegedly learned of the misrepresentation, we conclude that the Burgis' claim is meritless, based upon the Burgis' own submissions. Here, a review of the exhibits to the Complaint discloses that, by letter dated December 21, 2006, Capital One Bank advised the Burgis that the debt had been assigned to OSI for collection, but that the debt had **not** been sold to OSI. See, Complaint, supra, Exhibits at unnumbered page 16 ("Our records show that OSI has been assigned to this account in an attempt to collect this debt on our behalf since January 14, 2006," and "this account was not sold, but serviced by outside collection agencies collecting on our behalf."). Accordingly, the Burgis have not provided any factual allegations which would support a claim that Gurstel misrepresented the **owner** of the debt, in commencing the State Court action. Therefore, we recommend that the Burgis' Section 1692e(14) claim be dismissed, pursuant to the statute of limitations, and for failure to state a claim.

        2.    <u>The Plaintiffs' FCRA Claim</u>.  Next, we consider whether the Burgis have stated any claim under the FCRA. Notably, the Burgis have not asserted a separate Count for any FCRA claim, nor have they alleged that any particular provision of the FCRA has been violated. Instead, the Complaint mentions the FCRA

only in passing, see, <u>Complaint</u>, supra at ¶¶1, 30, and none of the exhibits, which were submitted in support of the Complaint, address the FCRA in any substantive way.

However, construing the Complaint generously, Gurstel states that the Burgis have unsuccessfully attempted to assert an FCRA claim, pursuant to Title 15 U.S.C. §1681s-2. "In relevant part, the FCRA requires a creditor who furnishes information to a credit bureau (1) to provide accurate information, see 15 U.S.C. §1681s-2(a), and (2) to undertake an investigation upon receipt of a notice of dispute regarding information that it has furnished, see 15 U.S.C. §1681s-2(b)." <u>Thulin v. EMC Mortg. Corp.</u>, 2007 WL 3037353 at *6 (D. Minn., October 16, 2007), citing <u>Yutesler v. Sears Roebuck & Co.</u>, 263 F.Supp.2d 1209, 1210-11 (D. Minn. 2003).[7]

As we have detailed, the Burgis allege that Gurstel failed to report to third-party CRAs that they had disputed the debt in question.  See, <u>Complaint</u>, supra at ¶16.  To the extent that the Burgis have asserted a claim pursuant to Section 1681s-2(b), Gurstel contends that the claim is meritless, because Gurstel does not report any

---

[7]Notably, "[t]he duties imposed by Section 1681s-2(a) are not subject to private rights of action by virtue of 15 U.S.C. §1681s-2(d)," although "Section 1681s-2(d) does not speak to private actions brought for violations of Section 1681s-2(b)." <u>Yutesler v. Sears Roebuck & Co.</u>, 263 F. Supp.2d 1209, 1210-11 (D. Minn. 2003); see also, <u>Thulin v. EMC Mortg. Corp.</u>, 2007 WL 3037353 at *6 (D. Minn., October 16, 2007); <u>Gordon v. Greenpoint Credit</u>, 266 F. Supp.2d 1007, 1010 (S.D. Iowa 2003).

information to third-party CRAs, and therefore, has no affirmative duty to report a dispute.  See, <u>Defendant's Memorandum in Support</u>, <u>Docket No. 8</u>, at 8.  We need not reach that argument, however, because we conclude that the Burgis' claim fails for other reasons.

Section 1681s-2(b) "applies only after a consumer [Burgi] has notified a credit bureau that [she] disputes the accuracy of the information provided by a creditor [Gurstel/Capital One Bank] and, in turn, the credit bureau has advised the creditor [Gurstel/Capital One Bank] of the dispute."   <u>Thulin v. EMC Mortg. Corp.</u>, supra at *6, citing <u>Title 15 U.S.C. §1681s-2(b)</u>; see also, <u>Smith v. Citibank (South Dakota), N.A.</u>, 2001 WL 34079057 at *3 (W.D. Mo., October 3, 2001)(collecting cases).  Here, the Burgis have not alleged that they reported the dispute to any third-party CRAs -- instead, they allege that they reported the dispute directly to Gurstel.  See, <u>McKinzie v. Regions Bank</u>, 2008 WL 899254 at *2 (W.D. Ark., March 31, 2008)("Missing from Plaintiff's complaint are the allegations that he disputed his debt with a credit reporting agency, that the credit reporting agency notified Regions, and that Regions failed to take action based upon such notice.").

Assuming that Gurstel "furnishes" credit information to CRAs, Gurstel would have an affirmative duty to investigate the dispute, only after the Burgis reported the

dispute to a CRA, and the CRA reported the dispute, in turn, to Gurstel.  "[T]he language of Section 1681s-2(b) * * * triggers a duty to investigate and correct errors only after the creditor has 'receiv[ed] notice pursuant to section 1681i(a)(2),'" which "come[s] only from the consumer-reporting agency."  Id. at *6 n. 10; see also, Kirk v. ED Fund, 2007 WL 2226046 at *4 (W.D. Mo., August 1, 2007); Zotta v. NationsCredit Financial Services Corp., 297 F. Supp.2d 1196, 1203, 1205 (E.D. Mo. 2003).  Since the Burgis have not alleged that they reported the dispute to any CRAs, or that any CRA reported the dispute, in turn, to Gurstel, we find no basis for a claim pursuant to Section 1681s-2(b).

Indeed, it is not enough for the Burgis to reverse the sequence, and to assert that they themselves reported the dispute to Gurstel, and that Gurstel should have reported the dispute to CRAs.  As succinctly observed by the Thulin Court, "[c]ase law does not support that argument."  Id. at *6 n. 10, citing Stafford v. Cross Country Bank, 262 F. Supp.2d 776, 783-84 (W.D. Ky. 2003)("Under the statutory language, notification from a consumer is not enough."), and Lowe v. Surpas Res. Corp., 253 F. Supp.2d 1209, 1254 (D. Kan. 2003)("Courts have consistently held that this duty is triggered only after the furnisher * * * receives notice of the dispute from a

consumer reporting agency, not just the consumer.")(collecting cases)[internal quotation omitted].

Therefore, we find no basis to conclude that the Burgis have stated a claim against Gurstel, for failure to investigate a dispute, pursuant to Section 1681s-2(b) of the FCRA, and we recommend that Gurstel's Motion be granted in that respect.

3.    <u>The Plaintiffs' State Law Claim</u>.   Although we recommend the dismissal of the Burgis' Federal claims, we nonetheless turn to consider whether the Burgis have stated a claim under the CAA against Gurstel.   The Burgis contend generally that, as described in their Complaint, Gurstel's conduct violated the CAA, and is "generally unfair, deceptive, oppressive, unconscionable, and contrary to public policy," in violation of Minnesota law.   See, <u>Complaint</u>, supra at ¶¶27-28.

The CAA prohibits "collection agencies" from engaging in certain improper practices, and from "violat[ing] any of the provisions of the Fair Debt Collection Practices Act of 1977 while attempting to collect on any account, bill or other indebtedness."   <u>Minnesota Statutes Section 332.37(12)</u>.   The CAA defines a "collection agency" as "any person engaged in the business of collection for others any account, bill or other indebtedness except as hereinafter provided."   <u>Minnesota</u>

<u>Statutes Section 332.31, Subdivision 3</u>.  However, the CAA expressly excludes certain

persons and entities from this definition, as follows:

> The term "collection agency" shall not include persons
> whose collection activities are confined to and are directly
> related to the operation of a business other than that of a
> collection agency such as, but not limited to banks when
> collecting accounts owed to the banks and when the bank
> will sustain any loss arising from uncollectible accounts,
> abstract companies doing an escrow business, real estate
> brokers, public officers, persons acting under order of a
> court, **lawyers,** trust companies, insurance companies,
> credit unions, savings associations, loan or finance
> companies unless they are engaged in asserting, enforcing
> or prosecuting unsecured claims which have been
> purchased from any person, firm, or association when there
> is recourse to the seller for all or part of the claim if the
> claim is not collected.

<u>Minnesota Statutes Section 332.32</u> [emphasis added].

Here, Gurstel argues that a plain reading of the statute excludes it from liability under

the CAA.  See, <u>Defendant's Memorandum in Support</u>, supra at 7, citing <u>State ex rel.</u>

<u>Swanson v. Messerli & Kramer, P.A.</u>, No. 62-C7-04-12204, at p. 5 (Minn. Dist. Ct.,

August 24, 2007)("[L]awyers are excluded from the definition of 'collection agency'

if they **are engaged in the practice of law** in their collection activities.")[emphasis

in original]; see also, <u>State ex rel. Hatch v. JBC Legal Group, P.C.</u>, 2006 WL 1388453

at *2, *3 (Minn. Dist. Ct., April 13, 2006)("[T]he exclusion applies only if lawyers

**are engaged as lawyers** when collecting debts for others," but that "their exclusion is unconditional.")[emphasis in original].  We agree.

There is no dispute that Gurstel was providing legal services to Capital One Bank when it corresponded with the Burgis, and when it commenced the underlying collection action.  See, <u>Complaint</u>, supra at ¶10 ("[Gurstel] filed a civil complaint in the name of an alleged creditor, Capital One, on or about August 11, 2006 * * * ."). The Burgis baldly assert that Gurstel is a "collector," as defined by the CAA, <u>id.</u> at ¶3, but they have not provided any basis, nor any authority, to disregard the statutory exclusion which is contained in Section 332.32.[8]

Lastly, as we have noted, in the form of a conclusory gloss, the Burgis allege as follows:

> 19.     Defendant's actions, omissions, misrepresentations, violations and inability to produce material disclosures and competent evidence of the alleged debt as alleged herein have constituted harassment which has resulted in the negligent and intentional infliction of emotional distress

---

[8]Moreover, the Burgis' CAA claim is derivative of their FDCPA claims.  See, <u>Complaint</u>, supra at ¶27, citing <u>Minnesota Statutes Section 332.37(12)</u>("No collection agency or collectors shall * * * violate any of the provisions of the Fair Debt Collection Practices Act of 1977 while attempting to collect on any account, bill or other indebtedness.").  Accordingly, because we recommend the dismissal of the Burgis' FDCPA claims, their claim under the CAA "cannot survive."  <u>Burgi v. Messerli & Kramer, P.A.</u>, 2008 WL 4181732 at *7 (D. Minn., September 5, 2008).

upon the Plaintiffs, proximately causing Plaintiffs to suffer severe mental distress, mental and physical pain, embarrassment, humiliation which Plaintiffs will in the future continue to suffer the same.

20.     The conduct of Defendants harassing Plaintiffs in an effort to collect the alleged debt, constitutes violations of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§1692d, 1692e, 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692g(b) amongst others, as well as an invasion of his [sic] privacy by an intrusion upon Plaintiffs' seclusion.

Complaint, Docket No. 1, at ¶¶19 and 20.

Arguably, the Plaintiffs intended to assert State law causes of action for the negligent and intentional infliction of emotional distress, and for the invasion of privacy by intrusion upon the Plaintiffs' seclusion.  See, Stringer v. St. James R-1 School Dist., 446 F.3d 799, 801 (8th Cir. 2006)(pro se Complaints are entitled to a liberal construction); Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004)(same).

Since the substance of those claims have not been addressed by the parties, and since, as a result of our recommendations, the Court would have no viable Federal claims before it, we recommend that the District Court not extend supplemental jurisdiction over the intentional infliction, and intrusion upon seclusion claims, and that those claims be dismissed without prejudice.  See, Gilson v. Weber, 433 F.3d 642, 647 (8th Cir. 2006)("Under 28 U.S.C. §1367(c)(3), a court may 'decline to exercise

supplemental jurisdiction over a claim * * * [i]f the district court has dismissed all claims over which it has original jurisdiction,'" as "Congress unambiguously gave district courts discretion in [Section] 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed and there is no basis to find an abuse of discretion here."), citing Labickas v. Arkansas State University, 78 F.3d 333, 334 (8th Cir. 1996), cert. denied, 519 U.S. 968 (1996), and McLaurin v. Prater, CO-1, 30 F.3d 982, 985 (8th Cir. 1994); see also, Barstad v. Murray County, 420 F.3d 880, 888 (8th Cir. 2005), quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)("[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims.").[9]

---

[9]Although the Burgis' Complaint does not expressly assert the basis for the jurisdiction of this Court, they plainly assert claims under a number of Federal Statutes, and we reasonably construe the jurisdiction basis as dependent upon the presence of Federal questions. Indeed, resort to the Minnesota Secretary of State discloses that Gurstel is listed as a Minnesota domestic corporation, and no appearances have been made by any other Defendant. As a consequence, their action is not predicated upon our diversity jurisdiction.

In sum, we recommend that Gurstel's Motion be granted as to the Burgis' State law claim under the CAA, with prejudice, but without prejudice as to any other State law claim.

In sum, we recommend that Gurstel's Motion to Dismiss be granted, in its entirety, and that the Complaint be dismissed.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That Gurstel's Motion to Dismiss [Docket No. 6] be granted.

2.     That the Burgis' Federal causes of action be dismissed with prejudice.

3.     That the Burgis' State law cause of action under the Minnesota Collection Agencies Act, Minnesota Statutes Section 332.37, be dismissed with prejudice, and any remaining State law actions be dismissed without prejudice.


Dated:  September 24, 2008                    s/Raymond L. Erickson
                                              Raymond L. Erickson
                                              CHIEF U.S. MAGISTRATE JUDGE

- 26 -

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 10, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 10, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.

- 27 -